[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] DECISION AND FINAL JUDGMENT ENTRY
This matter came to be considered upon a response filed by counsel for appellant, Montgomery County Children Services Board ("MCCSB"), on May 30, 2000 to an order issued by this court on May 16, 2000 in which we ordered MCCSB to show cause as to why this matter should not be dismissed for lack of a final appealable order.
On August 31, 1999, MCCSB filed a complaint asking the Montgomery County Court of Common Pleas, Juvenile Division to adjudicate Jacob and Jeramey Isaacs dependent and to grant permanent custody of the boys to MCCSB. The boys were the twin sons of Kelly Ring. The complaint alleged as follows. The twins were born six weeks prematurely and both tested positive for methadone at the time of their births. Although Ring had been receiving methadone as treatment for her heroin addiction, she had admitted using heroin and methadone throughout the pregnancy. The presence of methadone in one's body masks the presence of heroin, so the twins might have had heroin in their bodies at the time of their births. Four of Ring's older children were in the legal custody of relatives, having been adjudicated neglected because Ring had failed to care for their basic medical and educational needs. MCCSB was actively seeking legal custody of Ring's fifth child, whom Ring had "dropped" with non-relatives to seek drug treatment. Although Ring had attempted to participate in drug treatment programs, she had failed to successfully complete such programs. Ring's substance abuse problems had made it impossible for her to care for her other children. Ring had refused to cooperate with MCCSB. On September 17, 1999, a magistrate granted interim temporary custody of the boys to MCCSB.
The remaining procedural history relevant to this appeal is unclear to this court because the record is incomplete, as we will discuss infra. According to MCCSB, sometime prior to October 12, 1999, MCCSB filed a motion with the juvenile court to disclose and admit Ring's substance abuse treatment records, specifically the results of her monthly urine drops. Ring objected to MCCSB's motion. On October 12, 1999, MCCSB filed a response to Ring's objections. On November 15, 1999, the trial court sustained Ring's objections after finding that the results of her monthly urine drops were protected by the physician-patient privilege.
On December 15, 1999, MCCSB filed a notice of appeal of the juvenile court's November 15, 1999 order. On May 16, 2000, we suasponte ordered MCCSB to show cause why their appeal should not be dismissed for lack of a final appealable order. On May 30, 2000, MCCSB filed a response to our show cause order, arguing that the juvenile court's order is a final appealable order pursuant to R.C. 2505.02(B)(2).
Before determining whether we have jurisdiction to review the juvenile court's order, we must discuss the state of the record in this case. The first document relating to this appeal that is in the record is MCCSB's October 12, 1999 "Response to [Ring's] Objections to the Admittance of Specific Records Regarding Mental Health and Hospital Information." MCCSB's original motion regarding the monthly urine drop results is not in the record. According to MCCSB's October 12, 1999 response, a magistrate ordered Project Cure to "produce" these records on September 22, 1999, but such court order is not in the record. Further, Ring's objections to the magistrate's order are not in the record.
The absence of these documents from the record is significant. The juvenile court's order states, "[Ring] objects to the admittance of the results of her monthly urine drops at Project Cure, claiming that they should be protected by the physician-patient privilege. MCCSB, on the other hand, argues that these records are not covered by the privilege and should bedisclosed." (Emphasis added.) The juvenile court's order concludes that "the records of [the] drug tests from Project Cure [shall] not be admitted into evidence." (Emphasis added.) Based upon these statements and the absence of MCCSB's motion from the record, it is unclear to us whether MCCSB's motion was a motion for discovery of the test results or a motion in limine asking the juvenile court to make a tentative ruling on whether it would admit the test results at trial. Such distinction is critical because it hampers our ability to determine whether the juvenile court's order is a final order which we have jurisdiction to review. A juvenile court's ruling on a motion for discovery could potentially be a final order, see R.C. 2505.02(B), while a juvenile court's ruling on a motion in limine could never be a final order, Covington v. Sawyer (1983), 9 Ohio App.3d 40, 44,458 N.E.2d 465, 470. MCCSB had the burden of providing us with a complete and adequate record. Planey v. Planey, (Sept. 17, 1997), Mahoning App. No. 95-C.A.213, unreported. MCCSB's failure to meet its burden could have been fatal to its case. We will, however, proceed to a discussion of whether we have jurisdiction to review the juvenile court's order. In examining whether we have jurisdiction, we will assume that the juvenile court's order denied MCCSB's motion for discovery of the results of Ring's monthly urine drops because it is clear that a ruling on a motion in limine is not a final order.
The Ohio Constitution grants appellate courts jurisdiction to review final orders of the trial courts within their districts. Section 3(B)(2), Article IV, Ohio Constitution. If an order is not final, a court of appeals lacks jurisdiction to review it.General Acc. Ins. Co. v. Insurance. Co. of N. Am. (1989), 44 Ohio St.3d 17,20, 540 N.E.2d 266, 269. R.C. 2505.02(B) discusses five types of orders which are final orders which may be reviewed, affirmed, modified, or reversed, with or without retrial, by an appellate court.
Initially, we note that the juvenile court's order is not a final order pursuant to R.C. 2505.02(B)(1) because the order did not determine the action and prevent a judgment, R.C.2505.02(B)(3) because the order did not vacate or set aside a judgment or grant a new trial, or R.C. 2505.02(B)(5) because the order did not involve a determination regarding a class action.
MCCSB argues that the juvenile court's order is a final order pursuant to R.C. 2505.02(B)(2). R.C. 2505.02(B)(2) provides that a final order is "[a]n order that affects a substantial right made in a special proceeding or upon a summary application in an action after judgment." Although R.C. 2505.02 was amended in July 1998, this provision of the statute was not affected by the amendment.
A "substantial right" is "a right that the United States Constitution, the Ohio Constitution, a statute, the common law, or a rule of procedure entitles a person to enforce or protect." R.C. 2505.02(A)(1). MCCSB argues that the juvenile court's order affects a substantial right because "children possess a fundamental right to be free from physical, sexual, and other abuses." We do not dispute that such fundamental right exists, but such right is not directly involved in the juvenile court's order that is before us. The appeal in this case challenges an order which denied MCCSB's request to disclose the results of Ring's monthly urine drops. The order does not place the boys in Ring's custody and care and thus their right to be free from such abuses is not in jeopardy as a result of the juvenile court's order. The juvenile court's order determines solely that the results of Ring's monthly urine drops will not be disclosed; it does not determine that MCCSB's complaint will fail and the boys will be returned to Ring's custody. MCCSB's inability to present the urine drop results might not ultimately be fatal to its case. The question that must be determined is whether the juvenile court's order denying MCCSB's request to disclose the results of Ring's monthly urine drops directly affects a right that is protected by the United States or Ohio Constitutions, a statute, the common law, or a rule of procedure. We will assume, without deciding, that the boys have a substantial right in discovering the results of Ring's monthly urine drops which, presumably, would indicate whether their mother, to whom their care and custody could be entrusted, had regularly been using heroin.
A "special proceeding" is "an action or proceeding that is specially created by statute and that prior to 1853 was not denoted as an action at law or a suit in equity." R.C.2505.02(A)(2). When R.C. 2505.02 was amended in July 1998, the legislature defined "special proceeding" as the Supreme Court of Ohio had defined it in Polikoff v. Adam (1993), 67 Ohio St.3d 100,616 N.E.2d 213, syllabus. The supreme court has stated that "[u]nder Polikoff, it is the underlying action that must be examined to determine whether an order was entered in a special proceeding." (Emphasis sic.) Walters v. The Enrichment Ctr. ofWishing Well, Inc. (1997), 78 Ohio St.3d 118, 121-122,676 N.E.2d 890, 893. The underlying action in this case involves MCCSB's complaint asking for permanent custody of the boys.
"[C]omplaints brought in juvenile court pursuant to statute
to * * * permanently terminate parental rights are `special proceedings'" because "[s]uch actions were not known at common law." (Emphasis sic.) In re Murray (1990), 52 Ohio St.3d 155,161, 556 N.E.2d 1169, 1175 (Douglas, J., concurring). MCCSB's complaint was brought pursuant to R.C. 2151.413 and requested permanent custody of the boys. Thus, because the underlying action in this case involves a special proceeding, we can conclude that the juvenile court's order was entered in a special proceeding.
Although we have determined that the juvenile court's order involves a substantial right made in a special proceeding, "[t]he crucial question * * * concerns whether the decision of the trial court in [a] special proceeding affects a substantial right." (Emphasis sic.) Bell v. Mt. Sinai Med. Ctr. (1993), 67 Ohio St.3d 60,63, 616 N.E.2d 181, 184. An order which affects a substantial right is one which, if not immediately appealable, would foreclose appropriate relief in the future. Id.; Neary v. Board of ZoningAppeals (June 30, 1999), Montgomery App. No. 17428, unreported, citing State v. Chalender (1994), 99 Ohio App.3d 4, 6-7,649 N.E.2d 1254, 1255-1256.
We cannot conclude that the juvenile court's order denying MCCSB's motion to disclose the results of the monthly urine drops would foreclose appropriate relief in the future because such decision can be appealed to our court when and if the juvenile court ultimately denies MCCSB's complaint for permanent custody of the boys. Should the juvenile court deny MCCSB's complaint, MCCSB can appeal that decision and raise, as an assignment of error, the juvenile court's failure to allow the discovery of the results of the monthly urine drops. Thus, the juvenile court's order is not a final order pursuant to R.C. 2505.02(B)(2).
Although MCCSB does not raise this argument, the juvenile court's order could be a final order pursuant to R.C.2505.02(B)(4) which provides that an order will be a final order if it grants or denies a provisional remedy and both of the following apply:
 (a) The order in effect determines the action with respect to the provisional remedy and prevents a judgment in the action in favor of the appealing party with respect to the provisional remedy.
 (b) The appealing party would not be afforded a meaningful or effective remedy by an appeal following final judgment as to all proceedings, issues, claims, and parties in the action.
We conclude that the juvenile court's order denying MCCSB's motion for disclosure of the test results is not a final order under R.C. 2505.02(B)(4) because MCCSB will be afforded a meaningful or effective remedy on appeal following the juvenile court's final judgment in this proceeding. As we stated supra, if the juvenile court denies MCCSB's complaint for permanent custody of the children, MCCSB can appeal that decision and argue that the juvenile court erred in not allowing the discovery of the results of the monthly urine drops.
Thus, even if MCCSB had met its burden of providing us with a complete and adequate record, and such record had revealed that MCCSB's motion was for discovery of the test results instead of merely a motion in limine, we would conclude that the juvenile court's order denying such disclosure is not a final order. If the record had revealed that MCCSB's motion was a motion in limine, we would also conclude that the juvenile court's order refusing to admit the test results is not a final order.
In its response to our show cause order, MCCSB raises some policy arguments in support of its argument that the juvenile court's order is a final order. We will not accept such arguments, however, because they assume that the juvenile court's denial of its motion to discover the results of Ring's monthly urine drops will automatically result in the denial of its complaint for permanent custody. Such decision is yet to be made. MCCSB might still be awarded permanent custody of the boys by the juvenile court. MCCSB's arguments also assume that certain results will occur if MCCSB's complaint for permanent custody is denied. Again, we cannot rely on mere assumptions or possibilities. We recognize that MCCSB is concerned for the boys' safety, but such concerns do not allow us to declare that the juvenile court's order is a final order. If the juvenile court ultimately denies MCCSB's complaint for permanent custody of the boys, perhaps the solution for MCCSB would be to closely monitor the boys after they are returned to Ring and, if need be, ask the court for temporary care again should a situation which necessitates such action arise.
Upon due consideration of the foregoing, IT IS HEREBY ORDERED that this case is dismissed for lack of a final appealable order.
IT IS SO ORDERED.
 ____________________________ PER CURIAM
WILLIAM H. WOLFF, JR., MIKE FAIN, FREDERICK N. YOUNG, Judges.